Court will proceed to the fourth case, Platt v. Brown. Mr. McLaughlin May it please the court. My name is Todd McLaughlin. I represent the plaintiff Michael Platt. We are here on a Rule 12b6 motion. We seek to have that decision reversed. We're here over the Illinois bail bond statute's security deposit feature. In Illinois state court, there are essentially three ways a criminal defendant can make bail, one of which involves paying 10% of the bail amount down. In that circumstance, the statute provides that upon satisfying the bond conditions, the person who pays that bail is charged a 10% fee. There's a minimum involved. You have to pay at least $25. There is now a maximum of $100. In Mr. Platt's case, his bail was set at $2 million. He exercised the 10% provision and paid down $200,000, and upon his acquittal, he was refunded $180,000, resulting in him being charged $20,000 for a bail bond fee. We challenge that on an as-applied basis to him and to others similarly situated, should we get that far, who paid those types of excesses of amounts. We claim that violates both substantive due process and procedural due process and also equal protection. There is a case already that has interpreted the statute. I could just clarify that statement. I was puzzled by that in the briefing. Is this really an as-applied challenge? I understood that the application facts don't really matter here, that what you're challenging is the rationality of the 1% fee. We're charging it as applied because what makes it irrational is it has no bearing to the cost of what's being charged. We allege the costs are less than $100. That's true for everybody, right? Well, it's true for people who paid, let's say, $25. We don't have any problem with that, and that's what the Skilled Court decided, U.S. Supreme Court decision back in 1972. But when you have a situation where people are— Well, no, it was just the 1% fee. The court in—is it Skilled or Shilled? I don't know. Potato or batata, Your Honor? Whichever, Shilled. The court was dealing with a facial challenge to the 1% bail bond fee in Illinois. It wasn't just the $7.25 that the particular plaintiff in that case wanted back. So the application facts didn't really matter there either. Correct. So we really have a facial challenge, or at least perhaps a facial challenge for everybody whose bail was set at more than $10,000. You could certainly say that, although now the statute's changed, so it's— Well, right, from that time period, right, going back within the statute of limitations. As it stands now, you're asserting that that magic line's $100 because we don't have a cost study of what those costs may be. But let's say, hypothetically, in discovery, the clerk's office produced evidence that it cost $1,000 to process someone's bail, and that was what they were trying to recoup. We would be hard-pressed to say it's unreasonable to charge $100. So that's why I say it's not quite facial in that respect. But what we're saying is that certainly charging $20,000 when we believe the cost is less than $100 is just too much across the line for substantive process purposes. If it's too much across the line, then that's a facial challenge. With respect to— Not an as-applied challenge, because it doesn't matter how much it costs to process your client's bail, or bond, I should say. Excuse me. Okay. So it's really a facial challenge. No. I disagree with that part. Because there are those who— You don't want a remedy just for him. I don't want a remedy just for him, but I don't want a remedy for everybody. You want a remedy for everybody whose bail was set at more than $10,000. Correct, but not for those less than that. So it's not a facial challenge. So you want a facial remedy for that group. Correct. Okay. With respect to—so we have a substantive process challenge for that point. We have a procedural due process challenge, because under the Matthew v. Elder factors, we essentially say there is no protection against erroneous deprivation. That entire argument turns on whether or not you view having the right to challenge your bail as a proxy for the right to challenge the fee. If you view those provisions as challenging the bail as proper procedural safeguards, we lose on procedural due process. If you don't accept that, and we don't, we argue that because of the way the bail system works and because the two different things are involved, the bail is set to assure that the accused shows up at trial. The bail bond fee is supposedly there just to deal with the processing cost, and there's no way to challenge that other than through a lawsuit. Right. I think you're right about that. The focus of the analysis is wrong. It has to be on the administrative fee, not the setting of the amount of bail, which is an entirely different question. But that is not going to advance your procedural due process argument very far, because you're not asking for more process. This is just a ministerial act. There's nothing for anybody at the county level to do, any county actor to do to calculate or determine whether the fee applies or doesn't apply. It applies across the board. Yes, Your Honor, and that realm is simply a matter of balancing the other two factors, which is the private interest and the government's interest. The private interest here is $20,000. The government interest is to recoup costs that we allege are less than $100. All it shows is that you're not asking for more process, because a hearing would get you nowhere. Because the legal standards, there's no legal determination or factual determination to be made at a hearing. Everybody gets assessed the fee. Yes. So there's just a real fatal flaw in the procedural claim here. What you're really complaining about is substance. Substance due process, and then secondly, the equal protection claim. The equal protection claim, we are not trying to compare our situation to those who don't pay the fee at all. What we're saying is in that group who pay 10%, it's irrational to have some people pay $20,000 and have some people pay $25 when there's no basis to distinguish. The allegations in the case are that the cost of processing the bail bond fees is the same for everybody. Well, charging a fee is rational, right? That's what the SHIELD case stands for. Perfectly rational to charge a fee. So what you're really complaining about is arbitrariness. It's arbitrary. In this entirety, it would be different if there was evidence that showed that it costs a lot more to process a $2 million bond as opposed to a $500 bond. But the case is right now the costs are the same. And so that's what makes it irrational, and that's what makes it an equal protection violation. And as Your Honor, I think, identified earlier, part of the problem we had in the lower court was the comparison was being made to funding the entire bail bond system. And as the SHIELD case makes clear, in that case in which the Supreme Court found it did not violate equal protection, the way they found that fair was, for example, people who are released on personal recognizance don't pay any fee. And people who put down 10% do pay a fee. What makes that fair? Why can you charge one group and not the other? And the answer is that people who are released on personal recognizance don't have any property they have to give to the clerk's office to hold for safekeeping. They don't create an expense by doing that, whereas someone who puts down 10% creates an expense by the clerk's office to do that, and that's why there's a fee. Right. That case didn't have anything to do with the amount of the fee. Correct. And it also was a challenge to the classifications, the broader classifications within the bail system. In other words, personal recognizance, bonding out with 10% or paying the full cash amount. Why anybody would do the last thing, I don't know. That doesn't make any sense to me. So it's really a classification as between the other two. And the court didn't say much about the substance of the fee. The court didn't say anything about the substance of the fee. It wasn't argued below. Right. It was a question of the different classifications within the scheme, the legislative scheme. There was a due process claim, but it had to do with claimants or those who were ultimately found not guilty and whether this was a court cost. And the Supreme Court just said it wasn't a court cost, it's an administrative fee for administering the bond system and summarily rejected that claim on that basis. So to the extent that Schuld had anything to do with a substantive claim, it was very limited. I agree with that, Your Honor. And I think that sort of ties into the Marca de Tonis case, which this court had twice, the last time on a bond decision. I'm sorry, which case? Marca de Tonis, which came here twice. I'm thankfully aware of that. I suspect you are since it ended up with four different opinions in a plurality decision. 3-2-1-4. Yes, Your Honor. And I believe you had the standing piece. You were the one with the standing issue, correct? That's right. It's very hard to extrapolate a rule of law from that case. It is, but the one thing I would, the reason I brought it up was because in that case, part of that challenge involved is that an arrest fee, is it a booking fee? And I think when Judge Posner, in the first opinion, when he applied the Constitution of Winnestop, he just said, well, it's not an arrest fee. We all recognize we can't have that. It's a booking fee, and we kind of moved along. And that's what's happened in some of the other challenges that are cited in the briefs to these sort of bond-type fees, which range typically from $1 to $5 to $15 to sometimes $50. And thus far, I don't think any of those have rendered a decision on the substantive due process element. And part of that, in my view, is probably a reflection of, we haven't gotten such extreme results as we have here, where you have an uncapped statute based on a percentage. And that's what leads to these results. Back in the Shield days, the fee at issue there was $7.50. And so there wasn't much of a substantive due process argument to be made. On your equal protection claim, what is the classification that you're complaining about, the statutory classification? It's just a rational basis challenge. But it's everybody who essentially is, well, for our particular client, he's paying $20,000. Others are paying $25. So he's paying 800 times more than someone else. But there is no classification within the statute. Everybody who uses this aspect of the system pays 1%. It is. They're not misclassifying people, but it has an irrational result because of the way it works. There's no basis to charge that group of people anything any differently. And while you don't have to have exactitude, as the Seventh Circuit's made clear in the past, between what the costs are and what you're charging, on a record where the costs are less than $100, some people pay as little as $25, and someone else pays $20,000. Isn't that a disparate impact claim? And equal protection doctrine doesn't recognize disparate impact claims? You're really, again, complaining about the substance of this. It's a substantive claim. The substantive due process argument is certainly stronger than the equal protection argument. Yes. I see my light is on. I will reserve my time. Ms. Golds? Your Honors, may it please the Court, Assistant State's Attorney Haley Golds for defendants Dorothy Brown as Clerk of the Circuit Court of Cook County and Maria Pappas as Treasurer of Cook County. Your Honor, as Plaintiff has laid out in this case, he mounts a challenge on four different grounds, even though he just only mentioned three. He mounts a ground on substantive and procedural due process, as well as equal protection and under the uniformity clause of the Illinois Constitution. I'd like to get to each of those individually, but before that I'd like to just discuss a few things that I think are important in analyzing this case contextually. So the first thing to consider, which is talked about extensively in the Illinois Supreme Court decision in Shilb, v. Kubel, is that this legislation was actually a progressive reform in 1963 when it was passed. The idea of this legislation was to dispose of the bail bondsman system, wherein an individual in plaintiff's situation would likely have been responsible for giving the bail bondsman up to $200,000, which would have been nonrefundable, in exchange for that bail bondsman putting down the entire $2 million. In an effort to make the bail bonds system less onerous on individuals pending trial, the Illinois legislature determined that it would be best for the court to administer that system. The question here is not whether the government should operate such a system and whether there's a rational basis for the government to operate such a system and displace the private market. That was part of the issue in the Shilb case and perhaps before the Illinois Supreme Court in the Shilb case. That's 1971. What we're talking about now is the amount of the fee. Okay. So, Your Honor, I suppose the reason I bring that up is because I do think that that plays into why there's a rational basis for the fee. I think that although the Shilb decision was in 1970 and the statute was amended in the 1960s, ultimately the reasoning for that decision has been upheld by the 3rd Circuit in Buckland versus County of Montgomery in 1987 and again by the 2nd Circuit in Broussard. Nobody questions the government's ability to charge a fee. All we're talking about is the amount. Okay. Then I would just like to mention two other things for context's sake. One is that this is a voluntary service. I'm sorry, it's voluntary that plaintiff has chosen to use this service. That is something that again... As opposed to staying in jail. Well, he could put down the entire amount of the bail and to the extent that the plaintiff is alleging that the bail amount of $2 million is onerous, I would argue that plaintiff in this case was incarcerated for first-degree murder. Probable cause was found that he could have committed first-degree murder based on a bar fight and a $2 million bond was assessed. He was given the privilege of being released from jail and only having to put down $200,000, in which case the government was taking on a risk, the risk of flight having only put down $200,000 rather than $2 million. And if he were to flee, there would be no way to recoup that $800,000 that would have been missing and under the bail bondsman system would have been allowed to be recouped. Lastly, just for contextual purposes, I think a great deal of plaintiff's argument does rest on the fact that the statute has since been amended. Were we to open the doors to litigation on rational basis grounds any time that the legislature decided that it was appropriate to amend a statute for whatever policy reason they think is appropriate, I think it would open the floodgates to litigation and it may have a chilling effect on the legislature not wanting to invite those kinds of challenges. So I would just keep that in mind as we go through the different claims. Plaintiff's first claim is for substantive due process. It's a little confusing how when plaintiff freely admits in his opening brief on page 7 that there's no fundamental right at stake here. As the court said in Marco Donato's in 2014, substantive due process is not implicated unless there's a fundamental right. It's hard to see how a claim for substantive due process squares with the fact that plaintiff has admitted that there's no fundamental right at issue in this case. Ultimately, the U.S. Supreme Court in Shilp and this court in Payton v. County of Carroll both said that charging arrestees a fee in exchange for providing a service, and this is a service wherein he has to pay less than the entire amount of his bail to be released prior to trial, does not implicate the Constitution. So on those grounds alone, the substantive due process claim fails. No, Shilp was an equal protection case for the most part. It dealt with the three tiers within the bail system, the personal recognizance, the 10% bond, or the pay the full boat bond. There was a very limited due process claim. Well, yes, and... And it got short shrift. I think that part of... And didn't deal with the amount of the fee. Sure, and I'm not arguing that the reasoning of Shilp implicates the substantive due process claim here. I'm just saying that they determined that there was no fundamental right at issue in their equal protection analysis. Everybody agrees on that. Okay. So for that, I think that the substantive due process claim fails in this case. But... Well, the fact that there's no fundamental right involved doesn't mean that the law can be irrational. Right. The rational basis test, which applies to all legislation, does apply to this statute. I'm definitely not arguing with that. So explain in positive terms why the fee is rational and not arbitrary. All right, Your Honor. That is what I was about to get to. Ultimately, the government has an interest in, as has been enumerated in other cases, reducing the use of bail bondsmen. As the Buckland Court... We're not talking about the justifications for having a publicly operated bail bond system. That's not what this case is about. This case is about the amount of the fee. Okay. So to the extent it's about the amount of the fee, the court in Buckland v. Montgomery County did speak specifically to the amount of fee, and they said that there was a simplicity in administering the system in a percentage basis. So that is a rational basis by itself. To the extent the Supreme Court has consistently held that rational basis is a deferential test, and if any support can be conceived of, that would provide a rational basis that has to be upheld. Why is the percentage-based system not arbitrary in this context when you have bail ranging from... I don't know what the minimum bail in Illinois is. Right. A hundred dollars, maybe? I don't know. Sure. As high as many millions. Sure. And I think that the Illinois court in Shilb did discuss this. Ultimately, the interest in the percentage-based fee was to be able to recoup the costs that were lost in transitioning from the bail bond system. Okay. That's 40 years ago. We're talking about now. Right, and now... And what the Illinois Supreme Court said on the matter of a federal constitutional claim really is irrelevant. Speak in positive terms to us. Why is this not arbitrary? Right. And there's a simplicity in administering the fee, and then there's the necessity to recoup... Why wouldn't it be simple to assess $100 per person? It is simple to administer a $100 fee per person, but it's also simple to administer a 1% fee per person. That 1% fee per person helps to recoup the costs of the court system operating... Simplicity may be rational. Why is it not arbitrary in this context? It's not arbitrary because it's based on a variety of factors under 110.5, specifically looking at 110.5b, wherein the judge who is taking into consideration setting bail takes... We're not talking about the decision about how much bail to set. That's not being challenged. The plaintiff is not challenging that statute. Your Honor, I... That gives the court discretion to set the amount of bail. Sure. We're talking about the 1% fee across the board, no matter what the bail amount is. Sure, and, Your Honor, I would argue that given the amount of risk, both to the community as well as to the court system, that they may potentially lose money on somebody who jumps bail. The 1% fee is rational in order to spread the amount around. So an individual who's charged with first-degree murder pays more for that valuable service than an individual like the individual in Shilp who is only charged with minor traffic violations. Isn't the risk of bail jumping a factor in the bail decision? It's not... I mean, this is the ministerial across-the-board 1%. There is no discretion. Right, and... Right, so the risk that a defendant may jump bail is accounted for in the bail decision that each judge makes in each individual case. Yes, Your Honor, but there's some case law to support the theory that the risk that an individual will jump bail is greater when that individual is utilizing the 10% system because ultimately they have less to lose having only put down 10% of the bail rather than the entire amount of the bail. So the necessity to recover the cost and the risk based on that is a rational basis for this particular statute. Ultimately, there's also a benefit to the arrestee in this system as opposed to the previous system in that, like I mentioned previously, under the prior system, the individual would be responsible for paying the entire or up to the entire $200,000 to the bail bondsman. So in this system, it's actually more fair to the arrestee. I understand that there's a logical component that says charging $100 seems better than charging a percentage-based fee. Ultimately, that's a policy decision that should be made by the legislature. It's not a judicial decision. Here, we need to decide whether or not there was a rational basis. Can we decide this on the pleadings? Yes, Your Honor, I do believe that we can decide it on the pleadings. The plaintiff has alleged that it doesn't cost any more than $100 per defendant to administer this system. Yes, Your Honor, and the plaintiff has alleged that it only costs $100 to administer the processing costs of this system. In our brief, we discussed the fact that that's not the correct test. That is more akin to heightened scrutiny. I think it's telling that plaintiff's brief openly admits that he was unable to find any cases on point, especially when it came to the substantive due process claim. I was able to find cases on point, and those cases all dealt with heightened scrutiny in cases of First Amendment fees that were imposed on First Amendment interests. In South Suburban Realty, there was a fee imposed on a for sale sign, which was considered a commercial interest, and it was held that that fee had to explicitly match or be closely approximated to the cost to administer the system. Right, because that's how heightened scrutiny works. Right, and so I'm saying... And the plaintiff isn't arguing that there has to be a precise fit. But the plaintiff does seem to be arguing that it's irrational where there is not a match closely to the $100. Plaintiff seems to be saying that to the extent that the courts determine that they should be able to use this fee to fund the entire system and recoup the costs to the court for individuals who jump bail, that that's not the correct test. But ultimately, plaintiff can't decide what the correct test is under deferential rational basis review. So to the extent that, as the US Supreme Court held in Sheldon, there's an interest in recouping the costs as well as administering the system, there's a rational basis. So to the extent that there is a rational basis for this particular statute, I'd like to move next to plaintiff's procedural due process challenge. I think Your Honour certainly brought to light some very important elements of plaintiff's argument, which is to say plaintiff doesn't seem to have an argument that comports with Matthews v Eldredge. The issue in Matthews was whether or not there was a judicial... a pre-deprivation judicial procedure or whether the post-deprivation judicial procedure was adequate. Here plaintiff is not providing any suggestions for what procedures should be in place that would create procedural due process. He seems to be saying... Well, first he seems to be just weighing the two, the government versus the private interest, which is not how the test operates. And then to the extent he's not saying that, he seems to be saying because there's no rational basis, the procedure is therefore erroneous and it fails procedural due process. There are numerous procedural processes in place. There's a probable cause hearing to determine if the individual was falsely arrested. There is a bail hearing that goes over several factors that ultimately determine the amount of bail. And then under 1106 of the Code, there is the ability at any time during the proceedings to reduce the amount of bail and therefore the amount of the fee. Right, none of that really matters because this fee is automatically applied. There is no discretionary determination. There's no legal standard to be administered. It's just withheld as a ministerial matter. So the remedy for an improper lack of process is more process. Right. Nobody wants more process here. Right. They want money. Right. So ultimately, I think that from this procedural due process challenge fails. I see, I believe that I am out of time. If your honors have any further questions for me, I'm happy to answer them. Otherwise, thank you and I urge you to defer. With respect to the substantive due process claim, I think that the rationale just offered was essentially simple. It's easy to apply a percentage. And so that makes sense. Let's just do that. And the problem with that is there has to be a rationale. In the briefs, we give an example. You could charge people based on their weight. You could charge based on a percentage of how much they weigh. In fact, that would come closer to the cost than it would what they're doing now, which is a percentage of the bond. You know, the origin of this whole act was the old bail bond system where you'd bail bondsmen. You put the money, but you didn't get anything back. You paid your 10%. It was all gone. And nobody beefed about that. Or if they did, they lost. They beefed that you shouldn't be able to do it at all. Pardon? The beef in those cases was you should not be allowed to do that at all. What we're complaining about is the amount is now too high. No, no, no. The only difference was that the bail bondsmen put up the money. And when you didn't show, they foreclosed on the bail bond, and a company like Prudential would come in and pay the grant, the money. To keep that from happening so you'd get some money back if you showed up, they took the money away from the bail bondsmen and gave it back to the person who posted it. Incidentally, by the way, it was not always the defendant himself who coughed it up. But if you're talking about the origin of how it got there, it was to help out the defendant. And it did. Now you're complaining about that too. No, I'm complaining about the effect that it's had 50 years later that it doesn't lead to a rational result anymore. I wasn't talking about six years. I was talking about 50 or 60. Thank you. Thank you to all counsel. Case is taken under advisement. Court will proceed to the fifth.